MARÍA CABÁN, por sí y como madre con patria potestad de sus menores hijos Reyes, Dominga, Herminia, Juana y Carmen Hernández Cabán, demandantes-apelados-apelantes, *v.* FERNANDO TORREGROSA, demandado-apelante-apelado.

No. 3656.—*Visto:* Noviembre 25, 1925. *Resuelto:* Mayo 26, 1926.

1. EVIDENCIA—PRUEBA DOCUMENTAL—ACTOS PÚBLICOS U OFICIALES, PROCEDIMIENTOS, RÉCORDS Y CERTIFICADOS—CERTIFICACIONES DE RÉCORDS OFICIALES—CERTIFICACIONES DE NACIMIENTO.—Certificaciones del registro civil que contienen el sello del registro, proceden del departamento de beneficencia municipal y son expedidas por el *encargado del registro civil* son admisibles no obstante no consignarse en ellas después del que firma y antes de esas palabras las de "comisionado de beneficencia."

2. MUERTE—ACCIONES POR MUERTE CAUSADA—JUICIO, SENTENCIA Y REVISIÓN—DE LA SENTENCIA.—No puede sostenerse que la sentencia a favor de la esposa e hijos del fenecido en acción de daños y perjuicios por muerte sea errónea por no existir prueba de la condición de herederos de aquéllos cuando además de existir prueba documental admisible, hubo también prueba testifical no objetada por el demandado sobre dicho extremo.

3. APELACIÓN Y ERROR—RESOLUCIÓN Y DISPOSICIÓN DEL CASO—REVOCACIÓN—REVOCACIÓN EN CUANTO A UNA PARTE Y CONFIRMACIÓN EN CUANTO A LAS DEMÁS—EN GENERAL.—Dictada sentencia a favor de varios demandantes, si los intereses de las partes son separados e independientes de tal modo que

una adecuada decisión en cuanto a una no depende de la sentencia en cuanto a las demás, la sentencia puede ser revocada en cuanto a una y confirmada en cuanto a las restantes.

4. SENTENCIAS—EN CASOS CONTENCIOSOS—PARTES—SENTENCIA A FAVOR DE PERSONAS NO PARTES EN EL LITIGIO—SENTENCIA A FAVOR DE VARIOS DEMANDANTES CUANDO LA SÚPLICA SE REFIERE A SÓLO UNO.—Cuando de todo el contexto de una demanda se concluye que son varios los demandantes, el hecho de que la súplica pida sentencia condenando al demandado a satisfacer *a la demandante* determinada suma no es suficiente para sostener que la sentencia a favor de los varios demandantes se dictara a favor de personas no partes en el litigio.

5. APELACIÓN Y ERROR—REVISIÓN—CUESTIONES DE HECHO, VEREDICTOS Y CONCLUSIONES—CONCLUSIONES DE LA CORTE SENTENCIADORA.—Examinada la prueba toda practicada en el caso de autos, se resolvió que sostiene las conclusiones de la corte sentenciadora.

6. MUERTE—ACCIÓN POR MUERTE CAUSADA—DAÑOS Y PERJUICIOS, CONFISCACIONES *(Forfeitures)* Y MULTAS *(Fines)*—MEDIDA DE LOS DAÑOS Y PERJUICIOS E INDEMNIZACIÓN FIJADA POR SENTENCIA.—Bajo las circunstancias del caso de autos se resolvió que la indemnización fijada por la corte inferior—$3,000— era procedente.

SENTENCIA de *Enrique Lloreda*, J. (Arecibo), declarando con lugar demanda sobre daños y perjuicios, con costas. *Modificada y confirmada.*

E. *Martínez Avilés*, abogado de los demandantes-apelados-apelantes; *Jaime Sifre, Jr.*, y *Horacio Franceschi*, abogados del demandado-apelante-apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

María Cabán por sí y como madre con patria potestad de sus menores hijos Reyes, Dominga, Herminia, Juana y Carmen Hernández Cabán, demandó a Fernando Torregrosa en reclamación de daños y perjuicios con motivo de la muerte de José Hernández, esposo y padre de los demandantes, respectivamente, ocasionada por un automóvil del demandado. Fué el pleito a juicio y la corte dictó sentencia condenando al demandado a pagar a los demandantes la suma de tres mil dólares y las costas. Ambas partes apelaron: el demandado contra la totalidad de la sentencia y los demandantes contra la cuantía de la indemnización.

Examinaremos primero el recurso establecido por el demandado. El señalamiento de errores contiene seis, así: 1, erró la corte al admitir las certificaciones de la inscrip-

ción del nacimiento de Reyes, Herminia, Juana y Carmen Hernández; 2, erró al dictar sentencia en favor de María Cabán y de sus hijos sin que existiera prueba de su condición de herederos; 3, erró especialmente al dictar sentencia favorable a Dominga Hernández sin que se probara en el juicio que tal persona existía; 4, erró al dictar sentencia en favor de María Cabán y de sus hijos porque éstos no eran partes en el pleito; 5, erró al fijar la excesiva suma de tres mil dólares por concepto de indemnización, y 6, erró finalmente al declarar al demandado culpable de negligencia.

[1] Cuatro certificaciones de las inscripciones de los nacimientos de José Reyes Hernández Cabán, Herminia Hernández Cabán, Carmen Hernández Cabán y Juana Hernández Cabán como hijos legítimos de José Hernández Tosado y María Cabán Hernández, se introdujeron como prueba. Los documentos comienzan así: ''Gobierno Municipal.—Departamento de Beneficencia.—Quebradillas, P. R.—Yo, Dr. Arturo C. Arché, Encargado del Registro Civil del Municipio de Quebradillas, Puerto Rico, Certifico:'' y terminan del siguiente modo: ''(Firmado) Dr. A. C. Arché, Encargado del Registro Civil.—(Hay un sello que dice: Registro Civil de Quebradillas, P. R.)''

La parte demandada se opuso alegando que la ley disponía que los registros estarán a cargo del Comisionado de Sanidad y la certificación no expresa que el Dr. Arché sea el Comisionado de Sanidad y por tanto el único funcionario autorizado para expedirla. Contra la objeción del demandado, la corte admitió los documentos.

La apelante invoca el art. 48 de la Ley de Evidencia y cita a 10 Ruling Case Law, pág. 1104, sec. 308.

A nuestro juicio las mismas citas de la parte apelante sostienen la regla de la corte inferior. Las certificaciones contienen el sello del Registro Civil de Quebradillas y proceden del Departamento de Sanidad. Hubiera sido más claro y completo que después del nombre del Doctor Arché y antes de las palabras ''Encargado del Registro Civil''

se hubieran consignado estas otras palabras "Comisionado de Beneficencia," pero ellas pueden sobreentenderse. Para que el Doctor Arché hubiera podido estar *encargado del registro,* tenía necesariamente que ser el Comisionado o Director del ramo de Beneficencia de acuerdo con la ley y por tanto era él el funcionario que tenía bajo su custodia los libros en los cuales figuraban originales las inscripciones y el que podía expedir válidamente las certificaciones.

A partir de la vigencia de la ley No. 11 aprobada en 25 de junio de 1924, que enmendó entre otras la sección 31 de la Ley Municipal, estas certificaciones pueden ser expedidas por el Secretario que nombre el Director de Beneficencia Municipal. Las certificaciones de que aquí se trata fueron expedidas con anterioridad a la vigencia de la enmienda.

[2] No habiéndose cometido el primero de los errores señalados, cae por su base el segundo. Parece conveniente añadir que además de las certificaciones aparece de la transcripción que el testigo Julián Hernández declaró que José Hernández estaba casado con María Cabán y que tenía cuatro hijos que viven con la viuda, que el testigo Manuel López se expresó en igual sentido y que la propia demandante declarando en el juicio dijo que estuvo casada con José Hernández, con el cual procreó cuatro hijos llamados Peyito, Herminia, Carmelita y Juanita; todo sin oposición del demandado.

[3] La propia parte apelada admite que se ha cometido el tercer error, esto es, que no hay prueba en los autos de la existencia de Dominga Hernández y explica que ello se debió a una equivocada información recibida por el abogado de los demandantes y a un olvido de corregirla durante el juicio.

La discrepancia entre las partes surge al fijar las consecuencias del error. La apelante sostiene que vicia en su totalidad la sentencia. La apelada que la sentencia es susceptible de corrección por esta Corte Suprema.

La apelante hace la siguiente cita en apoyo de su contención:

"Existen numerosos casos en que se declara que una sentencia es un solo todo. Con esto se quiere significar que una sentencia no puede ser mala en parte y en parte buena pero debe subsistir o caer en su totalidad. Esta regla se aplica, sin embargo, sólo cuando el error es una parte inseparable de la sentencia." 33 C.J. 1051–52.

Más adelante, en la página 1130, del propio tomo 33 de Corpus Juris, encontramos lo que sigue:

"De acuerdo con algunas autoridades una sentencia contra dos o más demandados mancomunadamente se considera como un solo todo, de tal modo que si es irregular, errónea o nula en cuanto a uno de los demandados, lo es igualmente para todos; pero otras decisiones sostienen que una sentencia puede ser válida y ejecutable en cuanto a uno o algunos de los demandados aún siendo anulable o nula en cuanto a los otros. En algunas jurisdicciones las decisiones a menudo están aún en conflicto. Si tal sentencia puede ser revocada en cuanto a algunas de las partes y confirmada en cuanto a las demás en una apelación o auto de error, es materia que se discute en otro lugar en esta obra."

Y en el tomo 4, pág. 1182, al tratar de las apelaciones, expresa:

"Hay considerable diversidad de criterio sobre la cuestión de si una corte de apelación tiene poder para revocar una sentencia en cuanto a una o más de varias partes. Aunque bajo las circunstancias peculiares de unos pocos casos se han aplicado otras distinciones la línea general de distinción es si la sentencia es un solo todo o divisible, siendo la regla que una sentencia que es un solo todo y obliga mancomunadamente a varias partes de revocarse en cuanto a una debe revocarse en cuanto a todas; pero que, cuando los intereses de las partes son separados e independientes, de tal modo que una adecuada decisión del caso en cuanto a una de ellas no depende de la sentencia en cuanto a las demás, la sentencia puede ser revocada en cuanto a una y confirmarse en cuanto a las restantes."

Casi todos los casos en que se basan los textos transcritos, se refieren a demandados. Aquí se trata de demandantes. En la demanda se alegó que eran cinco los hijos que

dejó Hernández. La prueba demostró que eran cuatro. Eso no obstante la sentencia erróneamente se refirió a los cinco. El derecho de los cuatro no dependía del derecho del quinto que en realidad de verdad era una persona imaginaria. No puede sostenerse que la sentencia sea una integridad en tal sentido. Eliminando el demandante cuya existencia no está comprobada, la sentencia subsiste en cuanto a los otros demandantes. Se trata de un mero error que puede ser corregido en apelación como lo será en efecto.

En el caso de *Steeple* v. *Downing,* 60 Ind. 478, citado en el tomo 4, pág. 1183, nota 37 de Corpus Juris, se resolvió que:

"Cuando se ha dictado sentencia en favor de todos los demandantes en una acción para recobrar bienes inmuebles, pero las conclusiones de hecho son al efecto de que sólo algunos de ellos tienen derecho a recobrar, la corte de apelaciones, en una apelación traída por los demandados, revocará la sentencia sólo en cuanto a aquellos demandantes sin derecho a recobrar y la confirmará en cuanto a los demás."

Y en el de *Stotler* v. *Chicago etc. R. Co.,* 200 Mo. 107, también citado en Corpus Juris, tomo 4, pág. 1184, nota 42, se dijo:

" 'Consideramos que está establecido por la lógica y por las autoridades que podemos revocar la sentencia en cuanto a uno culpable de daño y confirmarlo en cuanto a los demás. (R.S. 1899, sec. 866). La doctrina primitiva era considerar una sentencia como un solo todo que debía ser revocada en cuanto a todos si se revocaba en cuanto a uno. Pero la mejor y más moderna regla es entrar más allá de la mera superficie de la sentencia y considerar la naturaleza del caso en sí, y cuando los intereses de las partes en una apelación pueden ser justamente separados, cuando los errores no afectan a las partes mancomunadamente y cuando los derechos de una parte no dependen de los de otra, entonces no es necesario revocar la sentencia en su totalidad. (Elliot on Appellate Procedure, secs. 574, 575.) El caso presente cae dentro de la regla anterior y la doctrina de esta corte está bien establecida al efecto de que en tal caso la sentencia puede ser revocada en cuanto a una parte y confirmada en cuanto a las restantes.' "

[4] El hecho de que en la súplica de la demanda se pida que se "dicte sentencia condenando al demandado . . . . a satisfacer a la demandante la suma de $40,000," cuando de todo el contexto de la demanda se concluye que los demandantes lo fueron la viuda y los hijos como herederos de José Hernández, no puede servir de base para sostener que la sentencia apelada se dictó a favor de personas que no eran partes en el litigio. Las citas legales que hace la apelante en su alegato son correctas pero no aplicables a los hechos de este caso.

El quinto error sería discutido al examinarse el recurso interpuesto por los demandantes.

[5] La corte sentenciadora apreció la prueba así:

"La prueba practicada por la demandante demuestra, en concordancia con parte principal de la prueba practicada por el demandado y con la inspección ocular del sitio o lugar donde ocurrió el suceso, practicada por el Juez que suscribe esta opinión, con asistencia de los abogados de las partes y del conductor del automóvil, que José Hernández iba por la derecha del camino como dispone la ley de carreteras y el automóvil guiado por Izquierdo venía detrás de Hernández y en su misma línea derecha con excesiva velocidad encontrándose a seis metros de distancia del Hernández y sin haber tocado con la debida antelación el claxon, no obstante haber divisado a dicho Hernández caminando por el lado derecho de la carretera desde que entró el automóvil en la parte recta de la misma donde ocurrió el accidente, . . . . . siendo de observarse, asimismo, que hacia la parte izquierda del automóvil quedaba espacio suficiente en la carretera para pasar el mismo sin alcanzar al Hernández, el cual cayó al golpe del automóvil hacia la cuneta del lado derecho de la carretera en dirección horizontal a la misma."

Hace la corte varias observaciones y continúa:

"Cuando algún viandante aparece en el camino frente a un chauffeur, el deber de éste es controlar de tal modo su máquina como lo exijan las circunstancias y no tiene ningún derecho a confiar en su habilidad para pasar. Es pues bien probado que la causa inmediata del accidente en el presente caso fué la negligencia del chauffeur.

"El automóvil del demandado, que al subir la cuesta y enfilar

la línea recta de la carretera donde ocurrió el hecho llevaba excesiva velocidad, según han declarado varios testigos, y en la misma línea lado derecho por donde caminaba en igual dirección José Hernández, el cual fué visto por el chauffeur del automóvil desde que enfiló la línea recta de la carretera, siguiendo detrás del Hernández sin tocar el claxon y sin desviarse hacia el lado izquierdo de la misma que le ofrecía ancho margen, espacio suficiente para desviarse hacia dicho lado y pasar sin peligro alguno de chocar con el cuerpo de Hernández y sin tener obstáculo alguno en el frente de la carretera que le estorbase ni impidiese el paso del automóvil, pues solamente aparecía en ella la figura del Hernández caminando por la orilla derecha y ocupando por tanto un pequeño espacio de la carretera dado la anchura de ésta.  El hecho de no detener el automóvil, que iba detrás del viandante Hernández, cuando llegó a estar a 25 metros de distancia del mismo, sino que por el contrario siguió en veloz marcha hasta llegar tan cerca del Hernández, que éste fué alcanzado por el automóvil con el tapalodo derecho del mismo y derribado por el golpe sufrido cayendo su cuerpo en dirección transversal a la carretera ocupando el mismo parte de la cuneta y parte de la faja no apisonada entre la cuneta y la carretera; siguiendo el automóvil velozmente y desviándose hacia la cuneta izquierda de la carretera en un recorrido de quince metros, donde fué a caer destrozándose el tapalodo izquierdo y la carroza del mismo recibiendo una señora que iba en el automóvil un golpe mortal del cual falleció a los pocos días y su esposo fué lanzado a la cuneta, cuyos hechos desgraciados corroboran la velocidad excesiva del automóvil en el momento que alcanzó y chocó con el cuerpo de José Hernández al desviarse súbitamente hacia la izquierda de la carretera; así como también, el hecho de encontrarse el auto en el momento del atropello de Hernández en el lado derecho de la carretera ocupado en su marcha por el viandante Hernández.  El desvío del automóvil fué indudablemente en el momento de alcanzar con el tapalodo al viandante Hernández.''

Hemos examinado cuidadosamente toda la prueba practicada y encontramos que sostiene las conclusiones de la corte sentenciadora.

[6] Veamos el recurso establecido por los demandantes. Ellos reclamaron cuarenta mil dólares.  La corte les concedió tres mil.  La prueba demostró que Hernández al morir

tenía 40 años de edad y que su esposa y sus cuatro hijos dependían para vivir de su trabajo. La madre de Hernández dejó al fallecer una pequeña finca en la que se cultivaban frutos menores. La finca pertenecía a varios herederos pero era Hernández el que la usufructuaba y sembraba personalmente. Hernández salía además a trabajar fuera en labores agrícolas y ganaba de setenta y cinco centavos a un peso diario. El demandado presentó un testigo que dijo que Hernández era un mendigo que participaba de las limosnas de la Alcaldía, pero la corte no lo creyó.

Bajo esas circunstancias creemos que la indemnización fijada por la corte es procedente. En el caso de *Cruz et al. v. Frau,* 31 D.P.R. 92, invocado por los apelantes se fijó en efecto la indemnización en cinco mil dólares, pero en él se demostró que el padre ganaba dos dólares diarios; y en el de *González v. The Fajardo Development Co.,* 30 D.P.R. 176, también invocado por los apelantes, si bien la indemnización se fijó en cuatro mil dólares, la sentencia se dictó sin especial condenación de costas.

*Por virtud de todo lo expuesto debe modificarse la sentencia apelada eliminando de ella el nombre de Dominga Hernández y, así modificada, confirmarse.*