Victoriano Muñoz Jr., asistido de y representado por su padre legítimo, Victoriano Muñoz Vázquez, demandante y apelado, *v.* Mario Escudero y Máximo de Mauret, demandados y apelantes.

No. 4884.—*Sometido:* Mayo 20, 1930. *Resuelto:* Julio 8, 1931.

*Dubón & Ochoteco,* abogados de los apelantes; *Feliú & La Costa,* abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

El presente es un caso sobre daños y perjuicios sufridos por un pasajero a consecuencia de un choque de dos guaguas de servicio público. En la demanda se reclamaron $25,000. Por la sentencia se concedieron $3,000. Apelaron los demandados señalando en su alegato la comisión de diez errores. Los dos primeros se refieren a cuestiones previas. Por el tercero se sostiene que hubo una discrepancia fatal entre lo alegado y probado. Los errores cuatro, cinco, seis, siete y ocho tratan de la negligencia imputada, de la negligencia probada y de la negligencia contributoria, discutiéndose en ellos las causas y efectos del choque y de las lesiones sufridas por el demandante. Se refieren el noveno a la cuantía de la indemnización y el décimo a las costas.

A fin de entrar en la discusión de los errores con el conocimiento de los hechos, haremos un resumen de éstos tales como se alegan en la demanda. A su debido tiempo nos referiremos a los declarados probados por el tribunal sentenciador.

El demandante, que compareció representado por su padre por contar sólo diez y nueve años de edad, alega que ambos demandados el 23 de agosto de 1927 y después, se dedicaban al negocio de transportar pasajeros, mediante paga, en el municipio de San Juan, en vehículos de motor conocidos por guaguas y especialmente nombrados "Eiseman" y "Grape Nuts," a virtud de certificados de la Comisión de Servicio Público.

Que en la fecha expresada, el demandante, habiendo pagado su pasaje, viajaba como pasajero de la guagua "Eiseman," que iba de San Juan a Santurce, por la Avenida Ponce de León, tripulada, manejada y gobernada por empleados de su dueño el demandado Escudero, y los dichos empleados y los del otro demandado Mauret que iban entonces guiando, manejando y gobernando la otra guagua

"Grape Nuts", lanzaron ambos vehículos a gran velocidad y a un regateo y al llegar a las inmediaciones del Capitolio se detuvo repentinamente la "Grape Nuts", sin hacer señal alguna, y la "Eiseman" chocó con ella de manera violenta, recibiendo el demandante "fuertes lesiones y golpes en la región de la ingle, en una pierna, en un brazo y en otras partes del cuerpo, causándole ello intensos y prolongados dolores", que el choque se debió a la velocidad a que llevaban los vehículos sus respectivos *chauffeurs* o conductores y a la culpa y negligencia de éstos.

Que a virtud de las lesiones, le fueron extirpadas al demandante, mediante operación quirúrgica, las vesículas seminales y la próstata, así como el epidídimo derecho, estando recluído en su casa y en el hospital por unos dos meses, quedando privado de su facultad de procrear, e impedido de trabajar para ganarse la vida, sufriendo intensos dolores físicos y agonía mental.

Examinemos ahora el primer error señalado. Abarca tres extremos a saber: (*a*), de la faz de la demanda aparece la negligencia contributoria del demandante; (*b*), de ella no resulta que los *chauffeurs* que manejaban las guaguas estuvieran actuando en el servicio de los ramos en que estaban empleados o en ocasión de sus funciones, y (*c*) no alega la demanda que las lesiones de que se queja el demandante, fueran la consecuencia de la negligencia de los demandados.

Para sostener el primer extremo hace el apelante varias citas de jurisprudencia que a primera vista parecen sostener su teoría de que el demandante debió haberse opuesto a que el vehículo no fuera conducido en la forma que se alega en la demanda, velando por su propia seguridad. Analizados, sin embargo, los casos, no son iguales al presente. Aquí se trata de vehículos de servicio público, que se operaban por un camino público, mediante pago, y el demandante era un pasajero corriente que ocupó el sitio a que tenía derecho y

confió como cosa natural en la capacidad de la persona que dirigía el vehículo. Véase 42 C. J. 1054, párrafo 803, que comienza diciendo: "Un conductor público por automóvil debe a sus pasajeros el mismo grado de cuidado que se requiere de cualquier otro conductor público"; y el propio volumen 42, pág. 1177, párrafo 955, que empieza así: "Cuando el pasajero no tiene a su cargo o controla la dirección del vehículo o del *chauffeur* u operador del mismo, la negligencia contributoria del conductor no sería imputada al pasajero que viaja mediante pago en un taxi, guagua (*motor bus*) u otro vehículo de motor público o alquilado."

Tampoco tienen razón los apelantes en el segundo extremo. Para sostener nuestra conclusión bastará referirnos a un caso mucho más fuerte que el presente, al de *Sánchez v. Asiatic Petroleum Co.*, 40 D.P.R. 104. Ni en el tercero. Leída rectamente la demanda contiene la imputación que los apelantes dicen que no contiene, a saber: que las lesiones del demandante fueron la consecuencia de la negligencia de los demandados.

Señalan los apelantes como errónea la actuación de la corte al negar su solicitud de que se les proporcionaran por el demandante ciertos particulares relativos a las lesiones por él sufridas. A nuestro juicio no se ha demostrado que la corte abusara de su discreción, atendidas las circunstancias concurrentes. La solicitud se hizo el 24 de marzo de 1928 y se notificó y radicó el 2 de abril, día en que los demandados presentaron su contestación. La conducta de los demandados revela que estaban perfectamente preparados y un examen de los particulares solicitados lleva a la conclusión de que tales particulares correspondían a la evidencia.

Además, estudiando el caso hemos encontrado que días después y con anterioridad al juicio, el 23 de abril, 1928, los demandados obtuvieron que se les permitiera la inspección médica del demandante que solicitaron el 18 del propio mes.

Por el tercer error plantean los apelantes lo que se

conoce por "variance". Para fundamentarlo sostienen que "la cuestión a ser discutida es si la extirpación del epidídimo derecho del demandante, etc., fueron causadas por el golpe sufrido en la región de la ingle, que es lo que se alega en la demanda, y que constituye la causa de acción sostenida por el demandante."

Refiérense a que la corte declaró probado en su opinión que el demandante acababa de sufrir una operación del epidídimo izquierdo antes del accidente, que la tuberculosis del epidídimo es siempre secundaria y que el traumatismo acelera o activa la infección tuberculosa.

Hacen un minucioso análisis de la prueba pericial de una y otra parte y dicen:

"Sentados los hechos anteriormente expresados, y considerándolos de la manera más favorable para el demandante, sólo podemos llegar a la conclusión de que si en realidad de verdad existió el traumatismo, ese traumatismo, no pudo producir la tuberculosis del epidídimo del demandante, y que lo más que pudo hacer fué acelerar o agravar la condición tuberculosa ya existente en dicho epidídimo. . ."

"En esas condiciones, la causa de acción que el demandante ejercitaba y alegaba en su demanda, era completamente distinta. De acuerdo con su demanda, el golpe produjo la tuberculosis, que es científicamente imposible, y lo único posible era que el golpe acelerara o agravara una tuberculosis ya existente, una causa de acción diferente."

E invocan la siguiente jurisprudencia: "El demandante debe ceñirse a las lesiones alegadas como base de sus daños. Puede haber sufrido anteriores lesiones. Por ellas no puede recobrar en esta acción; y si las lesiones que ahora sufre son una mera agravación de las previamente recibidas, no puede recobrar porque no lo alegó así en su demanda. Ello constituiría una causa de acción diferente de la que ha ejercitado." *Maynard* v. *Oregon R. & Nav. Co.,* 46 Or. 15. 68 L.R.A. 477; 78 Pac. 983. Cita algunos casos más en igual sentido, todos del estado de Oregon.

Creemos que el error no existe. Debe tenerse en cuenta en primer lugar que no es exacto que el demandante alegara como única base de su acción las extirpaciones indicadas. Alegó que sufrió otros golpes e intensos y prolongados dolores en todo el cuerpo.

Y en segundo lugar, como sostiene la parte apelada en su alegato: "Las autoridades invocadas . . . giran todas sobre la cuestión sustantiva y no la procesal. Tampoco comprenden sentencias que, como la apelada, no conceden indemnización alguna por lesiones y daños anteriores a los que se alegan."

En 21 Cal. Jur. 261, 263 y 264, encuéntrase la siguiente jurisprudencia que esclarece el punto en cuestión:

"El que la prueba deje de establecer el interés o derecho de uno a recobrar en la extensión reclamada en su alegación o el hecho de que se alegue una ausencia total de causa (consideration) y se pruebe solamente una ausencia parcial, no constituye 'variance'.

"Una incongruencia (variance) material es la que ha hecho equivocar a la parte adversa a su perjuicio en mantener su acción o defensa por los méritos.

"La cuestión de si una incongruencia en un caso determinado es inmaterial, debe, desde luego, resolverse a virtud de una consideración de las circunstancias.

"Claramente, una incongruencia es inmaterial, y puede hacerse caso omiso de ella cuando . . . el juicio se celebró total . . . y justamente por los méritos, como si no hubiera habido la incongruencia.

"Y es evidente que uno no es perjudicialmente llevado a equivocación cuando los hechos de la proposición controvertida se exponen correctamente en las alegaciones de la parte contraria."

Procederemos ahora al estudio de los errores cuarto al octavo que, como ya dijimos, versan sobre la negligencia imputada, la probada y la contributoria y sobre las causas y efectos del choque y de las lesiones.

La prueba de que el choque que ocasionó las lesiones recibidas por el demandante se debió a la negligencia de los empleados de los demandados en la forma expresada en la demanda, es contradictoria. El conflicto fué resuelto en favor

del demandante y no habiéndose demostrado pasión, prejuicio, parcialidad, o manifiesto error, no hay base para alterar la resolución.

Se hace gran énfasis en que en sus hechos probados la corte se refirió solamente a la gran velocidad de las guaguas y no declaró probada la existencia del regateo. Así en verdad resulta de la primera parte de la relación del caso y opinión de la corte sentenciadora, pero si se sigue examinando la opinión se verá que la corte dice:

"Las guaguas no son instrumentos o artefactos peligrosos *per se*; lo que los hace peligrosos y lo que constituye negligencia criminal, es el manejo descuidado de los mismos, lanzándolos a velocidades no permitidas por la ley, con el fin de establecer regateos, unas con otras, con manifiesto desprecio de la seguridad individual y con marcado alarde de irresponsabilidad e inconsciencia para la vida de los que en ellos van como pasajeros, o tienen necesidad de utilizar las calles por donde trafican."

Puede concluirse que se trata de una mera omisión. En las pruebas hay elementos suficientes para establecer que las guaguas "iban regateando, a velocidad grande, vertiginosa." Y siendo ello así, las dos son responsables. Si la "Grape Nuts" no hubiera parado, quizá el choque no ocurre, pero si la "Eiseman" no emprende con ella el regateo, tampoco el choque hubiera ocurrido.

En el caso de *Cruz et al.* v. *Frau,* 31 D.P.R. 92, 98, esta corte, por medio de su Juez Asociado Sr. Franco Soto, se expresó así:

"La excesiva velocidad es generalmente el origen de serios accidentes y es la razón de que en todo estatuto se encuentre regulada y su infracción es causa por sí misma de negligencia. La marcha lo más a la derecha que fuera posible de todo conductor o *chauffeur* es otra precaución que se advierte por la ley y su infracción en general es causa de negligencia. La disputa o regateo de vehículos de motor en un camino público es otra infracción de la Ley sobre Automóviles y los infractores deben ser responsables de negligencia y del daño que causen a otras personas. (artículo 13, supra.) Estamos plenamente convencidos que las condiciones en que se desarro-

llaron los hechos hicieron al demandado en este caso responsable de negligencia por todas o algunas de las infracciones a que nos hemos referido en el párrafo anterior.

"No es defensa la que se opone por el demandado haciendo descansar toda la responsabilidad de la muerte de Ramón Méndez en el *chauffeur* desconocido que guiaba el automóvil que venía detrás, alegando además que dicho *chauffeur*, sin avisar al demandado y sin éste darse cuenta que venía detrás, quiso pasarle en forma tan descuidada que fué causa de la muerte de Ramón Méndez. Cualquiera que fuese la participación del *chauffeur* desconocido en el accidente, los hechos y las circunstancias del caso han demostrado que el demandado contribuyó como causa eficiente a producir el accidente por no haber seguido las precauciones que advierte la ley en cuanto a la velocidad, guiar a la derecha o dejar paso al automóvil que viene detrás. No hay duda alguna que si el demandado se hubiera mantenido dentro de esas precauciones que establece la Ley de Automóviles, el choque con el otro automóvil no hubiera tenido lugar y menos la muerte de Ramón Méndez como relación de causa y efecto.

" 'La doctrina general es que no hay defensa, en acciones por daño resultante de negligencia, cuando la negligencia de terceras personas o de un accidente inevitable o de una cosa inanimada contribuyen a causar el daño al demandante, si la negligencia del demandado fué causa eficiente, sin la que el daño no hubiera ocurrido.' 22 Ruling Case Law, pág. 128."

El hecho de que la corte sentenciadora en el párrafo de su relación del caso y opinión que dejamos transcrito últimamente hablara de negligencia criminal, se señala como erróneo. Basta leer el párrafo para sostener que el error no existe. Al calor del examen del caso e influído por todos los detalles de la prueba en ese momento recordados, el juez fué en su calificación de la negligencia más lejos de lo que debía. Pero en ello no se basó su fallo. Además, los razonamientos y apreciaciones en su opinión no son motivo del recurso. Es el fallo mismo. Y el fallo se sostiene por las alegaciones y las pruebas.

Insisten los apelantes en que hubo negligencia contributoria por parte del demandante al no llamar la atención o protestar del regateo. Lo dicho al examinar y resolver la tercera cuestión envuelta en el primer error es aplicable

Parece conveniente agregar ahora las siguientes citas y razonamientos que tomamos del alegato de la parte apelada. Dicen:

"Es materia de conocimiento general que tales pasajeros descansan grandemente en el que maneja el vehículo (driver) quien tiene el exclusivo control y dirección del vehículo, ejercitando el necesario grado de cuidado, y por esa razón las cortes no están justificadas en adoptar una regla inflexible de que son culpables de negligencia los pasajeros al así hacerlo.' Boland v. St. Louis, San Francisco R. C., 284 S. W. 141, 144.

"Y se ha resuelto que un pasajero que ocupa el sitio para éstos en un taxi, que va a 25 ó 30 millas por hora y que ve un vehículo que se aproxima a 75 ó 100 pies de distancia, que tiene el paso sobre el taxi, es de derecho libre de negligencia contributoria, aun cuando no proteste ni llame la atención del *chauffeur*. McKellar v. Yellow Cab Co., 181 N. W. 384.

"Y aun bajo estas reglas, la cuestión es siempre si la actitud del pasajero contribuyó a causar su lesión. 42 C. J. Sec. 950, p. 1173 en la p. 1175.

"¿Cómo podía el apelado disuadir al *chauffeur* de la Eiseman a que cambiara su velocidad? ¿Cómo iba a controlarlo al aproximarse a la Grape Nuts? Aquéllos eran vehículos de servicio público; como tales conforme a la ley de servicio público, y según el testimonio en el récord, tenían su ruta fija. El apelado viajaba como pasajero mediante paga. El *chauffeur* tenía todo el control. No hay nada en el récord de que éste hubiera hecho nada a indicación de ningún pasajero.

"Bajo las reglas aplicables a porteadores, los apelantes estaban en este caso obligados, por lo menos a usar cuidado ordinario y razonable para la protección de sus pasajeros y a anticipar que sus vehículos podían encontrar otros en la calle y a mantener la debida vigilancia de éstos, y a usar de cuidado para mantener sus máquinas bajo aquel control que habría de evitar choques. 10 C. J. Sec. 1305, p. 867.

"Véanse casos en las notas 42 y 43, ilustrando la aplicación de esta doctrina.

"Y las reglas de la negligencia contributoria se tratan en 10 C. J. p. 34 (índice del artículo).

"De sostener la contención de los apelantes, se sentaría el que, en este caso, la causa de sus lesiones fué su propia negligencia; se

abriría la puerta al desorden y libertinaje en el tráfico de estos vehículos; se sancionaría la inmunidad de los que los explotan lucrativamente y habría de rehacerse el derecho sobre la culpa y la negligencia.

"En una obra bien conocida hoy se exponen las reglas así:

" 'Para que la negligencia contributoria de un pasajero sea un impedimento para recobrar por sus lesiones, precisa que tal negligencia sea causa próxima de las lesiones.' Huddy, Automóviles, 7a. ed. Sec. 822.

"Y un pasajero o huésped,

" '. . . en ausencia de circunstancias extraordinarias no es culpable de negligencia contributoria si descansa en la capacidad del *chauffeur* y no da pasos activos para que la máquina sea debidamente llevada.' Id. Id. Sec. 823.

"Y véase el caso, muy interesante de McDonald v. Messaba Ry. Co., 163 N. W. 298, que fué un caso de 'guaguas' o 'busses' muy análogo al nuestro. Contiene una instructiva exposición de la regla."

 Y ahora entraremos en la parte más sutil del caso, en el resultado de la prueba pericial y en la base que pueda proporcionar dicha prueba para conceder indemnización en pesos y centavos. El juez sentenciador, en su relación del caso y opinión, se expresó, en parte, así:

"Todo trauma sobre la ingle o sobre el testículo, se manifiesta por un proceso inflamatorio; si el paciente está afecto de tuberculosis, se establece la lucha entre la naturaleza y el bacilo; éste, ayudado por fuerzas extrañas, tiende a invadir la parte menos resistente del organismo; busca lo que se llama el *locus minore resistencia* y allí produce su mayor desarrollo y su mayor daño; de modo que una persona puede tener un 50% de infección virulenta; pero si se ocasiona un trauma, éste es responsable del otro 50%, que completa la unidad determinante de una infección total. . . . Y así resuelto ya que a pesar de la primera operación hecha al demandante, la segunda no hubiera sido necesaria a no mediar el trauma, esto es, el golpe que en la ingle o en el escroto sufriera, veamos ahora qué responsabilidad cobija a los demandados. . .

"La prueba del demandante ha establecido que sufrió lesiones en algunas partes de su cuerpo. No hay contradicción alguna en cuanto a su testimonio de que sufrió un golpe en sus partes pudendas. Ya

las declaraciones de los peritos médicos, que antes analizamos, nos dicen cuál fué el efecto de este choque en la economía del demandante. El hecho de ser él tuberculoso, ¿exime o aminora la responsabilidad de los demandados? Sostenemos que no. . .

"El hecho de que una persona sufra de tuberculosis pulmonar, aun cuando tal dolencia esté en estado larvado, no es excusa, justificación ni defensa para negarle indemnización, si dicha persona sufre un accidente a consecuencia del cual se acelera o precipita el desarrollo de la enfermedad. La ley no distingue. Es general. . . Concediendo a la enfermedad un 50%, el accidente es responsable del otro 50% para completar la unidad del daño. Sería una injusticia negar a una persona enferma el derecho a recobrar daños en un accidente por la sola razón de que su estado previo de enfermedad fué la causa determinante de los daños y no el accidente en sí. No podemos negar en este caso la posibilidad de que con el decurso del tiempo, el testículo derecho del demandante se hubiera tuberculizado; pero el hecho real, positivo, convincente es que el accidente sufrido provocó la tuberculización rápida que demandó la segunda intervención quirúrgica. Fué la chispa que encendió la hoguera; la gota de agua que hizo derramar el vaso."

En cuanto a la apreciación que de la prueba pericial hizo la corte, sólo diremos que la parte apelante no nos ha convencido de que sea errónea. Se basa en el dictamen de los peritos del demandante y en cierto modo en el de los demandados. Y en cuanto a la doctrina legal aplicada, creemos que encuentra apoyo en las autoridades. Están esas autoridades tan bien y concisamente expuestas en el alegato de la parte apelada, que en vez de citarlas por nosotros mismos y usar nuestro propio lenguaje, nos parece propio transcribir del alegato, como sigue:

"La verdadera regla, determinante de la responsabilidad de los apelantes se expone en las siguientes autoridades que son también de aplicación al punto que se argumenta en el tercer error de los apelados (su alegato, p. 26; este alegato, p. 12); Smart v. Kansas City, 105 S. W. 709; 14 L.R.A. N. S. 567; Sandel v. State of South Carolina, 104 S. E. 567; 13 L.R.A. 1268; Jones v. Caldwell, 116 Pac. 110; 48 L.R.A. N. S. 119; McCahill v. N.Y.T. Co. 201 y 221; 94 N. E. 616.

"Los tratados y enciclopedias se pronuncian en igual sentido. Véase 10 C. J. Sec. 1392, p. 978–82; 22 R.C.L. Sec. 33, 36 y 38; p. 150 et seq. y 154.

"De especial utilidad es una opinión en un caso, del cual tomamos el siguiente pasaje:

" 'En los casos en que la negligencia del demandado causa una enfermedad, desarrolla una tendencia latente a la enfermedad, agrava una enfermedad anterior, o lleva en orden de consecuencia inmediata, el demandado debe responder en daños por aquella parte de la condición de enfermedad causada por su negligencia; y si no puede hacerse una distribución (aportionment) o si no puede decirse que la enfermedad hubiera existido independientemente de la lesión inferida por el demandado, entonces el demandado es responsable por la condición enferma creada por sus actos negligentes.' Chicago, etc. v. Laxby, 68 L.R.A. 164, 166, 167.

"En el caso últimamente citado se sostuvo una sentencia a favor de la demandante por $10,000 por fractura del cuello del fémur y anquilosamiento de la coyuntura de una rodilla por tuberculosis desarrollada en ella.

"En otro caso igual al anterior, se sentó la misma doctrina en el sentido de que 'aun cuando uno que fué lesionado por otro estuviere sufriendo de tuberculosis de la rodilla, si ésta fué lesionada por negligencia, la persona negligente es responsable de todos los efectos que naturalmente sobrevienen de la lesión; y no es defensa el que las lesiones puedan haber sido agravadas o hechas más difíciles de curar, debido al estado de salud de la demandante, o el que por razón de enfermedad latente, las lesiones vinieron a ser más serias para ella (la demandante) de lo que hubieran sido si ella hubiera estado en robusta salud.' Smart v. Kansas City, 14 L.R.A. (N. S.) 567, 581.

"En otros muchos casos coleccionados en una nota a 48 L.R.A. N. S. 123, se expone también la regla sucintamente en estas palabras:

" 'El hecho de que la persona lesionada tenía una predisposición a enfermedad, o una debilidad latente, no aprovecha al demandado para relevarlo de responsabilidad por los daños que sobrevienen cuando su negligencia tráe a la actividad la enfermedad inactiva (dormant) o agrava la debilidad latente.'

"Otro caso típico, de aplicación al presente, es el de Jones v. Caldwell, 48 L.R.A. N. S. 119.

"Y en el caso de McCahill v. N.Y.T. Co. (supra) la Corte se expresó así:

" 'El automóvil del apelante chocó con y lesionó a un viajero. Las lesiones precipitaron, apresuraron y desarrollaron *delirium tremens* y esto le causó la muerte. (Se verá que la prueba médica demostró que el lesionado pudo haber estado sufriendo de tal delirium.) No pudo haber duda de que el acto negligente puso en movimiento la sucesión (sequence) de acontecimientos que causaron la muerte en la fecha en que ocurrió. Un análisis más cuidadoso revela que la verdadera proposición que plantea el apelante es que no debe hacérsele responsable por los resultados que siguieron a su negligencia, ya, primero, porque esos resultados no hubieran sobrevenido si el fenecido hubiera estado en condición normal, o segundo, porque su alcoholismo pudo haber causado *delirium tremens* y la muerte en fecha posterior, aun cuando el apelante no hubiera causado la lesión (que es lo mismo que pretenden los demandados en este caso). Esta proposición no puede sostenerse en ninguna de sus ramas que son algo análogas. . .

" 'El principio es igualmente cierto, aun cuando menos conocido, que el que propulsa (forward) una condición enferma y así precipita y prematuramente causa la muerte, no puede escapar responsabilidad aun cuando la enfermedad hubiera probablemente resultado en la muerte en fecha subsiguiente sin su intervención. Es de verse fácilmente que la probabilidad de muerte futura de causas existentes, de las que el demandado no respondería, sería probablemente un elemento importante al fijar daños, pero no es una defensa.' McCahill v. N.Y.T. Co. 48 L.R.A. (N. S.) 131, 132.

"Y otro caso interesante, que sostiene la sentencia es el de Normile v. Wheeling, T. Co., 68 L.R.A. 901–6.

"Un examen de las autoridades citadas por los apelados (su alegato, p. 43 al final y 44), en realidad sostienen la misma doctrina que los que dejamos citados bajo este error."

Resta sólo examinar los errores noveno y décimo, relativos a la cuantía de la indemnización y a la imposición de las costas. Todas las circunstancias consideradas, no estimamos que la de tres mil dólares concedida sea una indemnización excesiva. No hay base para sostener que la corte de distrito abusara de su poder discrecional al imponer el pago de las costas a los demandados.

*Debe, pues, a virtud de todo lo expuesto, declararse sin lugar el recurso y confirmarse la sentencia apelada.*