CRUZ ET AL., DEMANDANTES Y APELANTES, *v.* FRAU, DEMANDADO Y APELADO.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre daños y perjuicios.

No. 2701.—Resuelto en julio 27, 1922.

DAÑOS Y PERJUICIOS—NEGLIGENCIA—AUTOMÓVILES.—Examinada la evidencia que se transcribe en la opinión de este caso, *se resolvió:* que la negligencia del demandado al conducir el automóvil que ocasionó la muerte del causante de los demandantes es manifiesta.

ID.—NEGLIGENCIA DE TERCERAS PERSONAS.—La doctrina general es que no hay defensa, en acciones por daño resultante de negligencia, cuando la negligencia de terceras personas o de un accidente inevitable o de una cosa inanimada, contribuyen a causar el daño al demandante, si la negligencia del demandado fué causa eficiente, sin la que el daño no hubiera ocurrido.

ID.—NEGLIGENCIA CONCURRENTE DE DOS PERSONAS.—Cuando ocurre un daño debido a la negligencia concurrente de dos personas, y que no hubiera ocurrido en ausencia de la negligencia de cualquiera de ellas, la negligencia de ambas es la causa próxima del accidente, y ambas son responsables. Bajo tales circunstancias es, razonable hacer responsable a cada una por la totalidad del daño, puesto que el mismo no hubiera ocurrido faltando la negligencia de cualquiera de ellas.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. C. Brunet.*

Abogado del apelado: *Sr. F. Parra Capó.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

A fines de enero de 1921, el demandado guiaba su automóvil por la carretera que de la playa conduce a la ciudad de Ponce. Otro automóvil marchaba en la misma dirección y ambos chocaron. Como resultado del choque el demandado perdió el control del guía, yendo a su vez a chocar con un carro tirado por un caballo que atendía Ramón Méndez Rivera, quien a consecuencia del choque recibió un golpe en la cabeza que le produjo la muerte.

Josefa Cruz, viuda del finado Méndez Rivera, en representación de sus menores hijos Clotilde, Isabel, Carmen María y Juan Méndez y Cruz, habidos en su matrimonio con Ramón Méndez Rivera, interpuso la demanda de este caso, en la que se alega: que Josefa Cruz, esposa legítima de Ramón Méndez Rivera, había procreado cuatro hijos menores de edad, bajo la patria potestad de la madre y todos vivían del trabajo personal de Ramón Méndez, quien era de 45 años de edad, robusto y saludable y que aportaba para su familia la suma de dos dólares diarios; que a fines de enero de 1921 Ramón Méndez estaba atendiendo a un caballo con que trabajaba en la carretera de Ponce a la Playa, en una explanada fuera del firme de la carretera; que Manuel Frau, en

esos momentos venía de la Playa hacia Ponce a una gran velocidad, regateando con otro automóvil y negándose a darle derecha para que pasara dicho automóvil y que debido a la negativa de dar paso al otro automóvil vinieron ambos en contacto sobre la línea del trole que en aquel sitio está situada hacia la izquierda del demandado, perdiendo éste el control del guía por lo que su automóvil cruzó sin control alguno la carretera y fué a chocar con Ramón Méndez Rivera que se encontraba hacia el lado derecho de la carretera en relación con la dirección que traía el demandado, y fuera del afirmado de la misma, ocasionándole golpes de tal naturaleza que le produjeron la muerte.

El demandado contestó la demanda y alegó que Ramón Méndez no era de constitución robusta y negó que ganara un promedio de dos dólares diarios; que el demandado cuando tuvo su encuentro con Ramón Méndez Rivera no guiaba su automóvil a mayor velocidad que la normal y razonable permitida por la ley; que no regateaba con otro automóvil así como tampoco se negó a darle la derecha o paso a dicho automóvil el cual no tocaba bocina u otro aviso; que no llevaba su automóvil pegado hacia su izquierda, muy cerca de la línea del trole; que a pesar de la diligencia con que el demandado guiaba su automóvil no pudo evitar que el otro que venía detrás y que corría a gran velocidad y sin tocar bocina u otro aparato de aviso, al querer pasar al demandado, chocara con el carro del demandado por su lado izquierdo haciendo perder al demandado el control del guía, lanzando su automóvil hacia la orilla derecha de la carretera, llevándolo a chocar con el carro de Ramón Méndez, causándole a éste un golpe del que falleció a los dos días.

La corte inferior declaró sin lugar la demanda y contra la sentencia se interpuso el presente recurso solicitando su revocación.

El apelante señala varios errores como cometidos por la corte inferior, pero en vista de la conclusión a que podemos

llegar en este caso, en cuanto al resultado de la prueba, solamente se nos hará necesario examinar el error relativo a la apreciación que de la evidencia hizo la corte inferior.

Aunque en el record aparece la opinión de la corte inferior, no consta de la misma una relación de los hechos ni tampoco se consignan razonamientos legales y únicamente se dice: "La corte, como resultado de la evidencia, declara que no se han probado los hechos esenciales de la demanda." Hay pues que presumir que la corte inferior apreció que la evidencia fué contradictoria y resolvió este conflicto en favor del demandado. Se hace, por tanto, indispensable estudiar toda la prueba para cerciorarnos si ha existido el error señalado por el apelante.

Es un hecho que podemos considerar como probado que la muerte de Ramón Méndez fué el resultado del contacto o choque de dos automóviles que marchaban en una misma dirección de la Playa a la ciudad de Ponce, y que el automóvil del demandado a consecuencia del choque desviose hacia la orilla derecha del camino y chocó a su vez con el carro de Ramón Méndez, quien recibió el golpe que le ocasionó la muerte. El demandado admite este hecho en su contestación pero alegó que no obstante el cuidado con que guiaba su automóvil no pudo evitar que el otro automóvil que venía detrás y que corría a gran velocidad, sin tocar bocina, y el cual no pudo identificar, chocara por su lado izquierdo y causara el accidente.

Es un principio que, generalmente, por los efectos llegamos al conocimiento de las causas. A pesar de la excesiva velocidad del automóvil desconocido, el choque con el demandado no parece que fué violento porque el automóvil del demandado no sufrió desperfecto o avería de consideración que le impidiera seguir su marcha y así tampoco ocurrió con el otro automóvil que siguió su camino. Si la velocidad de este automóvil fué excesiva, el choque tenía que ser violento al contacto con el demandado y producir en uno y otro

averías o daños de consideración a consecuencia de la iner-
cia. ¿Cómo explicar que no hubo desperfecto que impidiera
la marcha del automóvil que no fué identificado y que el de-
mandado fuera lanzado hacia la derecha cruzando la carre-
tera y en dirección al carro del finado y sin que el deman-
dado sufriera nada más que la simple abolladura de la bo-
cina de la rueda izquierda por efecto del choque con el otro
automóvil, ni más daños que la rotura de un farol y tapa-
lodo en su lado derecho al chocar con el carro de Ramón
Méndez? La evidencia de ambas partes responde a esta pre-
gunta. No aparece, en verdad, que hubo el choque violento
entre los dos automóviles. Si así hubiera sido había que
pensar razonablemente que los desperfectos de uno u otro
automóvil tuvieran que ser de más graves consecuencias. Sin
duda alguna el accidente ocurrió a consecuencia de tratar
de pasarle el automóvil desconocido al demandado y enta-
blarse entre ambos una disputa o el regateo ilegal que pro-
hibe la ley. Véase el artículo 13, letra *"d,"* Ley sobre Au-
tomóviles, julio 1°., 1916.

El hecho de que el automóvil del demandado patinara de-
jando las huellas de su rueda delantera sobre el suelo em-
breado del camino en una distancia considerable, demuestra
claramente que el efecto del choque que produjo la muerte
de Ramón Méndez tuvo por causa más bien la excesiva velo-
cidad a que marchaba el demandado que no la violencia del
contacto de los dos automóviles. La declaración del testigo
José Torres que presenció el accidente, es de verdadera im-
portancia, cuando entre otras cosas dice: "Siento el golpe
del carro del señor Frau al coger la retranca para desviarse,
pero venía tan esmandado que todavía con la retranca puesta,
al atravesar la carretera patinando se ha llevado al señor
que estaba ñangotado." Dice además dicho testigo que vió
el automóvil del demandado patinar; que vió en la carretera
la marca de la rueda desde la orilla de la vía del troly hasta
atravesar la carretera; que presenció medir la patinada y

midió catorce metros marcada en la carretera desde donde
salió el automóvil adonde cogió a Ramón Méndez.   En rela-
ción con los extremos de esa declaración el mismo deman-
dado declara que en la carretera vió las huellas de sus go-
mas y que como una hora después se sacaron fotografías del
sitio del suceso;  que las huellas son la patinada que dió su
carro y que dichas huellas en su punto de partida están más
hacia la vía del trole que es la izquierda del demandado.   A
este importante detalle de las huellas que de manera inde-
leble quedaron marcadas en la carretera tenemos que pres-
tarle toda nuestra consideración.   Este fué un hecho de fácil
comprobación.   El camino de la Playa a la ciudad de Ponce
está embreado y en el momento del accidente y poco después
las marcas podían verse visiblemente.   El hecho de que dicho
camino esté embreado aparece del record.

Todos los detalles del accidente se enlazan de tal manera
que cada uno de por sí es de esencial interés y son los que
nos permiten que podamos reconstruir los hechos tal como
ocurrieron.   Un punto esencial que había de influir en la de-
cisión del caso es la situación de la línea del trole.   Aparece
comprobado que esa línea quedaba hacia el lado izquierdo
del demandado.   Si la marca inicial o si el punto de partida
de las huellas de las ruedas se veían marcadas cerca de la
línea del trole, eso indicaba que el demandado no marchaba
por su derecha.   La evidencia de dichas huellas que queda-
ron marcadas es una prueba física o circunstancial muy fuerte
en donde se puede ver que los hechos hablan por sí mismo
y surge la presunción o inferencia que el demandado mar-
chaba sin ejercitar la debida diligencia.

Otro extremo esencial y de importancia es que el auto-
móvil que se dice desconocido dió alcance al demandado y
tocaba bocina requiriendo el paso o vía franca por su de-
recha.   Este detalle se hizo evidente por la misma prueba
del demandado.   El testigo Becerra (prueba del demandado)
dijo:  "Veníamos de la central el señor Frau y un servidor

y al llegar ahí frente a la quinta de Ramerí sentimos la bo-
cina de un auto que venía  *  *  * ." Los testigos José
Torres y Celso Ortiz, de la parte demandante, confirman la
anterior declaración. El primero declara: " *  *  * yendo
por la parada trece oí la voz de una bocina que sonó, enton-
ces tendí la vista a un largo y ví por la parada catorce que
venían dos automóviles a toda velocidad, a una velocidad que
me causó cuidado de arrimarme a la orilla y ponerme en
observación porque los ví en disputa; al estar allí parado .
llegó el auto de atrás tocando bocina y alcanzó al de delante
y se le metió por la parte de adentro, porque el de delante
no cedía derecha  *  *  * ." Y el segundo dijo: "Cuando
venían los dos autos venían en disputa y el de atrás venía
tocando bocina  *  *  * ."

Se ha intentado explicar con la prueba del demandado
(de Becerra y el propio demandado) que se trató de darle
paso al automóvil que venía detrás pero que las circunstan-
cias en que estaban dispuestas las cosas en ese momento lo
impedían. Al ocurrir el suceso el demandado nos dice que
había algún movimiento o tráfico en el camino; sin embargo,
no aparece más movimiento de carros en aquel instante que
el de los dos automóviles que chocaron porque si bien el de-
mandado declara que había además dos o tres carros y un
*truck,* éstos se encontraban parados más adelante del sitio
de la ocurrencia. El camino era ancho, y el trole que venía
por su izquierda y pasó después del accidente menos pudo
impedir que el demandado tomara su derecha y dejara paso -
al automóvil que lo solicitaba. Todo demuestra claramente
que si las circunstancias que han rodeado el caso no expli-
can satisfactoriamente por qué el demandado fué impedido
de caminar por su derecha, hay que concluir que tampoco
él no ejerció la debida diligencia que un hombre, de ordinario
prudente y cauteloso, hubiera ejercitado en las mismas con-
diciones.

La excesiva velocidad es generalmente el origen de serios

accidentes y es la razón de que en todo estatuto se encuentre regulada y su infracción es causa por sí misma de negligencia. La marcha lo más a la derecha que fuera posible de todo conductor o *chauffeur* es otra precaución que se advierte por la ley y su infracción en general es causa de negligencia. La disputa o regateo de vehículos de motor en un camino público es otra infracción de la Ley sobre Automóviles y los infractores deben ser responsables de negligencia y del daño que causen a otras personas. (Artículo 13, *supra.*) Estamos plenamente convencido que las condiciones en que se desarrollaron los hechos hicieron al demandado en este caso responsable de negligencia por todas o algunas de las infracciones a que nos hemos referido en el párrafo anterior.

No es defensa la que se opone por el demandado haciendo descansar toda la responsabilidad de la muerte de Ramón Méndez en el *chauffeur* desconocido que guiaba el automóvil que venía detrás, alegando además que dicho *chauffeur,* sin avisar al demandado y sin éste darse cuenta que venía detrás, quiso pasarle en forma tan descuidada que fué causa de la muerte de Ramón Méndez. Cualquiera que fuese la participación del *chauffeur* desconocido en el accidente, los hechos y las circunstancias del caso han demostrado que el demandado contribuyó como causa eficiente a producir el accidente por no haber seguido las precauciones que advierte la ley en cuanto a la velocidad, guiar a la derecha o dejar paso al automóvil que viene detrás. No hay duda alguna que si el demandado se hubiera mantenido dentro de esas precauciones que establece la Ley de Automóviles, el choque con el otro automóvil no hubiera tenido lugar y menos la muerte de Ramón Méndez como relación de causa y efecto.

"La doctrina general es que no hay defensa, en acciones por daño resultante de negligencia, cuando la negligencia de terceras personas o de un accidente inevitable o de una cosa inanimada contribuyen a causar el daño al demandante, si la negligencia del demandado fué causa eficiente, sin la que el daño no hubiera ocurrido." 22 Ruling Case Law, pág. 128.

Aplicando la misma doctrina tampoco es defensa la pérdida del control del guía por efecto del choque porque este es solamente uno de los efectos en donde la falta de diligencia del demandado había de originar las consecuencias, que no por ser fatales, son menos imputables a su negligencia que en su origen fué la causa próxima del daño. En otras palabras, la pérdida del control del guía es el efecto del choque, y el choque es el resultado de la negligencia del demandado.

No debemos pasar desapercibido lo extraño que nos parece que un accidente como el de autos, que ocurre en pleno día haya sido imposible identificar el automóvil que chocó con el demandado ni tampoco al *chauffeur* que lo guiaba. Es cuestión ya regulada por la ley que cada automóvil lleve adelante y detrás, en sitio visible, una tablilla con el número de su licencia, de manera que sea fácil su identificación. La defensa del demandado esencialmente descansa en imputar al otro automóvil toda la responsabilidad del suceso pero tal vez, en interés del demandado, hubiera sido mejor haberse obtenido la identificación del otro automóvil que resulta desconocido. No obstante, la conclusión más favorable a que podíamos llegar es que el demandado había de compartir su responsabilidad con el otro automóvil y que ambos habían sido la causa próxima del accidente.

"Cuando se ocasiona un daño por la negligencia concurrente de dos personas y éste no hubiera ocurrido a falta de una u otra, la negligencia de ambas es la causa próxima del accidente, y las dos son responsables. Bajo tales circunstancias es razonable hacer a cada una responsable de toda la pérdida pues la misma no hubiera tenido lugar sin la negligencia de una u otra." 22 Ruling Case Law, págs. 129 y 130.

En cuanto a los daños y perjuicios sufridos por los demandantes y la prueba presentada para demostrarlos, creemos que una indemnización de cinco mil dólares es suficiente para satisfacerlos.

La sentencia de la corte inferior debe ser revocada y dic-

tarse otra en su lugar declarando con lugar la demanda y condenando al demandado a que pague a los demandantes la suma de cinco mil dólares en concepto de daños y perjuicios, y las costas.

> *Revocada la sentencia apelada, declarada con lugar la demanda y condenado el demandado a pagar $5,000 por daños y perjuicios, con las costas.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Wolf no intervino en la resolución de este caso.