Etelvina Pacheco, Rafael y Juan José Jiménez, demandantes y apelados, *v.* José B. Méndez, demandado y apelante.

No. 4970.—*Sometido:* Abril 9, 1930.—*Resuelto:* Enero 16, 1931.

*S. Suau, F. B. Fornaris* y *F. Prieto Azuar,* abogados del apelante; *González Fagundo & González Jr.,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TEXIDOR, emitió la opinión del tribunal.

El día 11 de septiembre de 1927, hacia la caída de la tarde, y por la carretera de Las Piedras hacia Juncos, montados a caballo, venían José Jiménez Rivera y Regino López. Al llegar estos dos hombres a un sitio llamado Juan Martín por la misma carretera, y en dirección contraria a la que ellos llevaban, vino el auto camión número H. P. 260, propiedad de José B. Méndez, guiado por el *chauffeur* Domingo Cruz, en aquel momento en servicio del propietario, y enganchó el caballo que montaba José Jiménez Rivera, y arrolló y mató a éste.

Esos son los hechos principales que, con la alegación de que el *chauffeur* que guiaba el auto camión, lo conducía a velocidad excesiva, sin tocar bocina, ni dar aviso alguno, y por el lado izquierdo, y las necesarias con respecto a las circunstancias de José Jiménez Rivera, edad, profesión, condición de salud; y las de perjuicio sufrido por la parte demandante, la viuda y los hijos del occiso, sirvieron de fundamento a una demanda, presentada ante la Corte de Distrito de Humacao por Etelvina Pacheco y Rafael y Juan

José Jiménez contra José B. Méndez. Este contestó la demanda, negando la negligencia de su empleado, y alegando que el hecho había ocurrido por la negligencia de José Jiménez Rivera, que venía a caballo por el lado izquierdo de la carretera y repentinamente trató de cruzar cuando el auto camión se hallaba tan cercano, que al conductor le fué imposible parar, a pesar de sus esfuerzos para ello.

Se siguió el procedimiento, y oído el caso por la corte, ésta dictó sentencia por la que condena al demandado a pagar a los demandantes cuatro mil dollars a título de indemnización, y las costas. Y contra esa sentencia, se ha formalizado la presente apelación.

■ La corte de distrito llegó a las conclusiones de hecho que aparecen en la relación del caso y opinión, en esta forma:

"Analizando la evidencia practicada en este caso, entendemos como probados los siguientes hechos:

"Que el día 11 de septiembre de 1927, como a las seis de la tarde, se dirigía José Jiménez Rivera, que era un hombre de 48 años de edad, carpintero y propietario, montado a caballo y por la carretera No. 5 que conduce de Las Piedras a Caguas y en dirección a Juncos.

"Que junto con él caminaba también a caballo el individuo Regino López, y que ambos iban por su derecha y hacia el lado de la cuneta, o sea, lo que forma el paseo de la carretera.

"Que al llegar al Km. 22 de dicha carretera, donde existe una curva, apareció un truck Mack propiedad de José B. Méndez y guiado por su empleado Domingo Cruz, siendo el número de dicho auto-camión el H. P. 260.

"Que el dicho auto-camión venía caminando por su izquierda y que en la orilla de la carretera y en su lado derecho fué cogido por el truck el referido José Jiménez, quien quedó muerto cayendo en aquel sitio con los pies hacia la cuneta y el cuerpo y cabeza sobre el paseo y afirmado de la carretera.

"Y que el truck caminaba a bastante velocidad no pudiendo parar fácilmente.

"Para llegar a estas conclusiones de hecho hemos tenido en cuenta la declaración de aquellos testigos ajenos en un todo al accidente y que no pueden tener interés alguno en este asunto, como lo son Eleu-

terio Hernández, testigos presenciales y el Jefe de Distrito de Policía, quien vió las huellas frescas del truck y nos asegura que él venía por su izquierda."

Citó la doctrina jurídica del caso *Cruz et al.* v. *Frau*, 31 D.P.R. 98–99, y añadió:

"El conductor del vehículo en este caso, al tomar la curva ignorando lo que había de encontrar después de ella, ha debido moderar la velocidad, y en esta forma es seguro que el accidente no hubiese ocurrido, pues hubiese tenido el absoluto control de la máquina y hubiese podido parar y conducir el carro por su derecha cuando quisiera, ya que por su propia declaración los frenos del camión estaban en buenas condiciones."

Ahora el apelante sostiene que la corte sentenciadora erró al apreciar la prueba, y que su error es manifiesto; y que también erró al fijar la indemnización en $4,000.

■ La prueba quizá fué contradictoria, y la corte resolvió el conflicto en favor de la presentada por la parte demandante, a la que concedió mejor crédito.

Es innegable que los elementos de prueba de la parte demandante eran más robustos, y de mejor credibilidad para la corte sentenciadora. Revélase esto en la opinión de la corte. Y sólo precisaría ver si al estimarlo así, incurrió el juez en error manifiesto. Después de estudiar la prueba, debemos conceder que la apreciación que de la misma hace el juez es correcta. Y no debe olvidarse que se trata de una prueba contradictoria, y que en la decisión del conflicto en la prueba, las presunciones se hallan a favor del juez sentenciador, por lo que se necesita, como hemos dicho frecuente y constantemente, que se nos convenza de que existe un error grave y manifiesto para que intervengamos en el resultado de esa apreciación.

■ La parte apelante fuerza su argumentación en el estudio de algunas contradicciones, reales o aparentes, en las que, según el apelante, incurrieron algunos de los testigos.

No tienen las contradicciones en el testimonio la impor-

tancia que se les dió en otros tiempos y en otros estados del derecho. El juez tiene una misión más alta que la de oír, y sujetar sus juicios a lo que se expresó de una determinada forma; él tiene que estudiar y pesar lo que se declaró, que entrar en el fondo de la prueba, y penetrar en el alma de la misma, para obtener una base fundamental para su determinación. Claro es que las contradicciones en que los testigos incurran pueden tener importancia, para guiarle a la conclusión de que estos testigos no han dicho la verdad; pero las circunstancias que rodean a la producción del testimonio, la actitud del testigo, reveladora de su psicología constante, o de su psicología del momento, la misma clase del interrogatorio, pueden y deben llevar al juez a una recta apreciación de la fuerza, o de la inocuidad, de esas contradicciones.

Acerca del mismo hecho, presenciado por tres o cuatro personas, igualmente veraces y honestas, e igualmente conscientes, pueden surgir en el testimonio de esas personas tres o cuatro versiones diferentes, al menos en el detalle. Nada más fácil, y nada que esté mejor reconocido por los autores en esta materia.

Aparte de esto, la situación del testigo, que por regla general se siente en una condición de inferioridad, con relación a los que le rodean, situación que raya en la indefensión, real o temida por el que declara; el mismo deseo de decir la verdad sin omitir nada de ella; el temor a que se exagere una contradicción aparente; la necesidad de repetir una respuesta varias veces; y el recelo a una infidelidad de la memoria, son elementos que colocan al que se sienta en la silla del testigo, si es persona honesta y de recta conciencia, en condiciones poco envidiables. Y todos esos son elementos que un juez tiene en cuenta para apreciar las contradicciones, y decidir con respecto a su importancia, a su peso, y a su realidad.

La apreciación de la prueba en conjunto lleva a la con-

clusión de que en este caso la torpeza y el desprecio a la vida y seguridad ajenas, amenaza constante de los viandantes y peatones, ha ocasionado la muerte de un hombre, y el perjuicio a una familia. Es correcta la creencia de que el camión de que se trata venía por su lado izquierdo en el camino y a una velocidad alta, que es comentada por uno de los testigos con la gráfica palabra ''esmandado,'' o desmandado, sin mando, sin dominio; que el atropellado venía a caballo, por el sitio de la carretera que le correspondía conforme a la ley, y que no hizo nada por cruzar el camino; que el choque del camión con el cuerpo de Jiménez ocasionó la muerte de éste; y en general que la falta de cuidado del *chauffeur* que guiaba el camión fué la causa del accidente, que de otra forma pudo evitarse. De que el demandado era el dueño del camión, que en esos momentos se utilizaba en su servicio industrial, y era guiado por su empleado, no hay duda alguna.

La lectura de la prueba, un tanto penosa por lo extensa, justifica la opinión del juez de distrito. No es extraño que un testigo, bajo un contra-interrogatorio de noventa repreguntas, como ocurre con Regino González, pueda confundirse un tanto, y caer en alguna contradicción, más de detalle que de fondo. Pero para juzgar de esto, como dejamos dicho, está el juez ante quien se practica la prueba.

En el caso *Rivera* v. *Martínez,* 2 S.P.R. 683, se declaró que la apreciación de la fuerza probatoria de las declaraciones en los testigos, ha de hacerse por las cortes, conforme a las reglas de la sana crítica, considerando la razón en que se funda, y las circunstancias que en los testigos concurran.

En el caso *Delannoy* v. *Blondet,* 22 D.P.R. 235, se dijo:

''Si hay el conflicto de evidencia que indica la parte apelante, a la corte inferior incumbía dirimirlo como lo dirimió a favor de la parte demandante, y si los testigos incurrieron en contradicciones, también a esa misma corte incumbía apreciar el valor probatorio de sus declaraciones como también lo apreció a favor de la parte demandante, sin que a esta corte de apelación sea permitido ir contra

la apreciación hecha por la corte inferior al resolver una pretensión de nuevo juicio dentro de su facultad discrecional de la que no aparece haya abusado en el presente caso, en que la filiación natural del demandante con relación al demandado se sostiene por la evidencia aportada al juicio.''

Y en *Franqui* v. *Fuertes Hnos.*, 41 D.P.R. 224, decimos:

''. . . . En varios casos hemos comentado el hecho de que inconsistencias entre las declaraciones de los testigos respecto a la forma en que ocurrió un accidente no afecta necesariamente su credibilidad, toda vez que por lo general los testigos pueden estar equivocados en parte de lo que vieron o lo que creyeron haber visto. Por otro lado, no es razón para no creer a uno u otro testigo por el hecho de que ambos relaten exactamente la misma historia, cuando existe la posibilidad de que pueden haber hablado sobre el asunto con el abogado, o ensayado entre sí. Cualquiera cuestión de esta clase cae dentro de la apreciación que debe hacer el juzgador del caso, o sea, el juez de distrito.''

El primer señalamiento de error en este caso, no puede ser considerado, ni tenido como base para una revocación.

■ Como segundo error se señala el que la corte fijara la suma de la indemnización en cuatro mil dollars, e impusiera las costas a la parte demandada.

Realmente se hace difícil saber la edad de José Jiménez cuando murió. De la demanda aparece que tenía 48 años; de la certificación de defunción, 55 años; de la certificación de la licencia para contraer matrimonio, se deduce que en la fecha de su muerte era hombre de 51 a 52 años. Pero de todas formas, el hecho que resulta de la prueba, es que se trataba de un hombre entre los 48 y los 55 años, sano, robusto, que ganaba un jornal de tres dollars diarios, que tenía una finca que atendía, que sostenía a su esposa y a un hijo, enfermos, y sostenía los gastos de educación de otro hijo. Considerado todo esto, no creemos que la suma fijada para indemnización sea, no ya excesiva, sino alta.

No existe el error señalado bajo ese número.

*La sentencia apelada debe ser confirmada.''*

EN RECONSIDERACION

Enero 30, 1931

La parte demandada y apelante en este caso nos pide la reconsideración de nuestra sentencia dictada en 16 de enero de 1931.

Ahora la parte alega que aunque no aparecen más que dos señalamientos de error en su alegato en apelación, el día de la vista ante este tribunal el abogado que compareció por tal parte apelante argumentó una excepción previa de falta de hechos basándose en que en la demanda no se alega ni de la prueba aparece curada la omisión de que el accidente objeto de la misma hubiera tenido lugar en un camino público.

Implícitamente esta cuestión ha quedado resuelta en la misma sentencia dictada por este tribunal, aunque ciertamente la parte apelante ha tenido tiempo y medios de presentar por escrito las alegaciones necesarias, y no lo ha hecho.

Sostenido por la sentencia cuya reconsideración se pide que el hecho ocurrió en la carretera de Las Piedras a Juncos, que según nuestra legislación es un camino público, como lo es toda carretera destinada al servicio público y comprendida en el plan general o en plan especial de carreteras, se halla resuelto el extremo que para la parte tiene tanta importancia con relación a su excepción previa. No tiene influencia ninguna en la resolución del caso el que se haya hablado del sitio conocido por Juan Martín. No hay otra interpretación lógica de la alegación del número cuatro de la demanda, después de sentar que el perjudicado iba por la carretera de Las Piedras a Juncos y que llegó al sitio denominado Juan Martín, que la de que este sitio está en la misma carretera.

Nos parece que hay alguna confusión en la teoría presentada por el peticionario con respecto a que la jurisprudencia en casos criminales es aplicable a acciones civiles cuando se trata de infracciones a la ley de automóviles. Aquí no se trata simplemente de una infracción a esa ley sino de la

muerte violenta de un ser humano ocasionada por negligencia o descuido del conductor o *chauffeur* de un automóvil, en una carretera pública.

*Por las razones expresadas debe declararse sin lugar la petición de reconsideración.*